**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No. 23-cr-73 (CKK)** |
| | : | |
| **TERON MCNEIL (8)** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C) [serious drug felony]. There is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendants' appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**APPLICABLE LAW**

Pursuant to 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendants' appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of

conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, the government may present evidence by way of a proffer at a detention hearing. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release that will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendants' appearance at future proceedings.

## **BACKGROUND**

On May 18, 2023, a federal grand jury returned a superseding indictment against defendant McNeil, among others, charging him with conspiracy to distribute more than 400 grams or more of a mixture and substance containing fentanyl (from January 2021 to the present).

### I. **The Overdose Death**

The genesis for this investigation is the overdose death of a young woman in the District of Columbia. On January 18, 2022, a three-count indictment was returned against defendants Larry and Justice Eastman, charging them with conspiracy to distribute fentanyl; distribution of fentanyl resulting in serious bodily injury; and distribution of fentanyl resulting in the death of a victim in Criminal Case No. 22-cr-22-CKK. The charges relate to the November 2020 overdose resulting in serious bodily injury and April 2021 overdose death of a female victim due to fentanyl toxicity.

The defendants in that related case, Larry and Justice Eastman, have pled guilty to Count I of their indictment, which is the fentanyl distribution conspiracy, and are pending sentencing.

## II.     The Broader Conspiracy

On March 9, 2023, a federal grand jury returned an indictment against defendants Craig Eastman (younger sibling to both Larry and Justice Eastman), Charles Taylor, and Hector Valdez in Criminal Case No. 23-cr-73-CKK. Evidence uncovered during the investigation of Larry and Justice Eastman indicated that Craig Eastman and his associate Charles Taylor were flying out to Los Angeles to acquire fentanyl-laced pills from their Los-Angeles-based supplier, Valdez. By March 22, 2023, Craig Eastman, Taylor, and Valdez were all in custody, and each of them are detained pending trial.

On April 6, 2023, the indictment was superseded to include, among others, Raymond Nava Jr. and Max Carias Torres. Both Torres and Nava are California-based upstream suppliers to Valdez. On April 26, 2023, both Torres and Nava were arrested in Los Angeles and are also detained pending trial.

## III.    McNeil and the Second Superseding Indictment

A second superseding indictment was returned on May 18, 2023, for, among others, defendant McNeil.  His role in the conspiracy is that he is a D.C.-based distributor of fentanyl-laced counterfeit oxycodone pills and was acquiring his supply from Valdez in Los Angeles.

On December 7, 2021, a package was intercepted by the United States Postal Inspection Service (USPIS). The suspect package was mailed from Carson, California, and addressed to:

John Turner
509 33rd Street
Southeast Washington DC 20019

The package was searched and inside were blue pills contained in plastic wrap.  Subsequent lab

testing confirmed the presence of para-fluorofentanyl, with the pills weighing in at 122.20 grams.

 

Investigation into the shipping address, 509 33rd Street SE, indicates the address is associated with the defendant's mother. USPS business records identified several internet protocol (IP) addresses that were tracking the status of the parcel. The subscriber information for some of those IP addresses identified the account holder as a woman, residing at 2716 Wade Road SE, which intelligence reports indicate is McNeil's girlfriend. Other IP addresses were ultimately identified as originating from a cellphone. The number for that cellphone was linked to McNeil through law enforcement database searches as well as the fact that that number was on file for McNeil by CSOSA. Further, a review of the defendant's call detail records indicate that he made approximately 30 calls to Valdez in December 2021, primarily in the days immediately prior to the shipment, on December 5 and 6, and then a flurry of calls occurring in late-December 7 and into December 8 (around the time the package was seized on December 7th).

USPIS Forensic Laboratory Services conducted a latent print analysis of the intercepted parcel and found Valdez's prints on both the adhesive side of the shipping label, as well as eight fingerprints and one palm print on the exterior of the shipping box. Meanwhile, McNeil's Apple Pay transactions corroborate payments to Valdez around the relevant time period:

- October 20, 2021: $1,000 from McNeil to Valdez

4

- November 2, 2021: $1,000 from McNeil to Valdez

- December 14, 2021: $1,350 from McNeil to Valdez

McNeil's Instagram communications with Valdez also confirm their drug trafficking conspiracy. McNeil appears to have been cautious with his written communications involving narcotics, primarily video calling Valdez instead of committing anything in writing. Nonetheless, in the message excerpt below, Valdez (lilcurl.b) asks McNeil (wild_boye) about when he is "getting more blues," referring to blue M-30 pills, and McNeil starting a video chat with Valdez later on.

| Author | |
|---|---|
| | wild_boye (Instagram: 326934625) |
| Sent | 2022-07-02 01:14:17 UTC |
| Body | Liked a message |
| Author | lilcurl.b (Instagram: 50311716672) |
| Sent | 2022-08-02 04:07:08 UTC |
| Body | Pops |
| Share | Date Created Unknown |
| | |
| Author | lilcurl.b (Instagram: 50311716672) |
| Sent | 2022-08-02 04:07:13 UTC |
| Body | When you getting more blues |
| Share | Date Created Unknown |
| | |
| Author | wild_boye (Instagram: 326934625) |
| Sent | 2022-08-08 14:29:11 UTC |
| Body | wild_boye started a video chat |
| Author | wild_boye (Instagram: 326934625) |
| Sent | 2022-08-08 14:29:50 UTC |
| Body | Video chat ended |
| Author | lilcurl.b (Instagram: 50311716672) |
| Sent | 2022-08-08 16:16:23 UTC |
| Body | Yoilio |
| Author | lilcurl.b (Instagram: 50311716672) |
| Sent | 2022-08-19 22:41:25 UTC |
| Body | 🙏🙏 |
| Share | Date Created Unknown |

Additionally, it appears that Valdez and McNeil had a close relationship because they also were aware of each other's personal situations beyond just the narcotics transactions. For example, McNeil was injured in a shooting on January 18, 2022, at 2716 Wade Road, SE, the girlfriend's

residence.  Valdez appears to check on McNeil's status with McNeil appreciating the check-in.



**ARGUMENT**

**I.**   **The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community and Risk of Flight**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, the defendant's criminal history and characteristics, and the dangers to the community posed by the defendant's release, the defendant cannot overcome the presumption that he is a danger to the community and a risk of nonappearance. To the contrary, these factors establish that the presumption is correct.

**A.**   **The nature and circumstances of the offense**

The nature and circumstances of the charged offenses weigh in favor of detention. The grand jury found probable cause to believe that the defendant engaged in a conspiracy to distribute more than 400 grams of fentanyl, dating back to January 2021. At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "fentanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams

of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[1] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of such deaths attributed to synthetic opioids, primarily fentanyl.[2]  In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[3] According to Howard University Hospital, the District of Columbia suffers close to 400 opioid related deaths per year—contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths.

      Here, the defendant was dealing fentanyl, which is made worse by the fact that it was disguised and passed off as legitimate oxycodone.  As indicated by the government's evidence, the defendant nearly received a significant quantity of these pills that had the potential to kill numerous people.  Worse yet, the messages indicate a historical and repeated relationship with Valdez, indicating that this package was not the sole transaction.  This factor weighs in favor of detention.

### B. The weight of the evidence against the defendant

The weight of the evidence against the defendant is extremely strong.  As laid out in the factual background, the intercepted package is linked to McNeil, as well as other communications linking him to the California-based supplier. This factor weighs in favor of detention.

### C. The history and characteristics of the defendant

The defendant's criminal history supports detention in this case. He has no less than fifteen prior arrests, two issued bench warrants, is on release pending trial for an offense in Prince George's County involving firearms, has a prior conviction for felony fleeing from police and

---

[1] https://www.dea.gov/resources/facts-about-fentanyl
[2] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[3] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html

destruction of property, and an earlier illegal gun possession conviction (which appears to have been set aside under the Youth Rehabilitation Act). In short, the defendant has two prior gun arrests and committed the instant offense while on probation.

More must be said about the defendant's felony fleeing and destruction of property offense from 2019 because that case is a prime example of both danger to the community and risk of flight/non-compliance with any bail conditions the Court might impose. First, the proffer of facts that the defendant admitted to as part of his plea in that case is harrowing. It is excerpted in full below:

> Had this case proceeded to trial, the government's evidence would have proven beyond a reasonable doubt that on March 15, 2019, around 3:19 a.m., Officer Matthew Williams of the U.S. Park Police was on patrol in a marked police cruiser. While parked along Piney Branch Parkway under the 16th Street overpass in Northwest Washington, D.C., Officer Williams saw a Chrysler Sebring driving eastbound on Piney Branch Parkway. Officer Williams followed behind the Chrysler and observed it fail to stop at two different stop signs. While on westbound Porter Street near Wisconsin Avenue, NW, Officer Williams activated the emergency lights on his police car in order to stop the Chrysler. The Chrysler pulled to the side of the road and Officer Williams approached to speak to the driver and sole occupant of the vehicle, defendant Teron McNeil. While Officer Williams was questioning the defendant, the defendant quickly accelerated and fled the scene of the stop.

> Officer Williams got back into his police cruiser and pursued the defendant. For 5-7 minutes, Officer Williams followed behind the defendant with his lights and siren activated, but the defendant continued to flee and did not yield. As the pursuit continued, the defendant sped down residential streets at speeds exceeding 60 miles per hour. While fleeing down Adam's Mill Road, just north of the intersection with Columbia Road, the defendant lost control of his vehicle and crashed into a parked car belonging to a private citizen. The owner later obtained a repair estimate showing the damage to be in excess of $2,000. After crashing into the civilian vehicle, the defendant abandoned his own car and fled from police. After a brief foot pursuit, police apprehended the defendant and placed him under arrest.

As noted by the factual proffer, the offense involved the defendant fleeing from law enforcement in both a vehicle and on foot in blatant disregard for his safety and the safety of others. Second, he pled guilty to this offense on March 13, 2020, and was given a fully suspended sentence.

8

Notably, his probation was terminated as unsuccessful just a few months ago, which by itself demonstrates that the defendant cannot be compliant with court supervision and is likely to engage in further violations. Even more egregious is the fact that the defendant continued to engage in criminal activity, including the instant offense, while he already was under probation for this felony offense.

As a result, the defendant's criminal history and characteristics support the presumption of detention in this matter, as he has displayed a history of noncompliance with laws and does not appear amenable to court supervision.

### D. The nature and seriousness of the danger to any person or the community posed by the person's release

The fourth factor—the nature and seriousness of the danger to any person or the community posed by the person's release—also weighs in favor of detention. The defendant is accused of conspiring to distribute hundreds of kilograms of fentanyl into the Washington D.C. community. As previously stated, fentanyl is now the leading cause of overdose deaths in the United States, which hit a record high in 2021. Here, the defendant is charged with distributing fentanyl, and given his demonstrated past noncompliance with court supervision, his release would pose a serious danger to the community.

### CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions of release that will reasonably assure the safety of any other person and the community. Accordingly, the government respectfully requests that the Court grant the government's motion to detain defendant McNeil pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

_/s/  Andy T. Wang_
ANDY T. WANG
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
D.C. Bar No. 1034325
Andy.wang@usdoj.gov